THE COUNTY OF LEON v. STATE.

165 So. 666.
Opinion Filed February 7, 1936.

*William Blount Myers,* for Appellant;

*O. C. Parker, Jr.,* State Attorney, for Appellee. .

DAVIS, J.—This is an appeal from a final decree of the Circuit Court of the Second Judicial Circuit of Florida in a proceeding brought under Sections 5106 C. G. L., 3296 R. G. S., *et seq.,* praying for validation of certain Tax Anticipation Certificates of Indebtedness proposed to be issued by the County of Leon for the purpose of presently funding a county building tax provided for and levied under the provisions of Section 2384 C. G. L., 1556 R. G. S., for the purpose of erecting in said county a new jail as provided for by law.

The Circuit Judge was of the opinion that the tax anticipation certificates of indebtedness thus sought to be herein validated were in fact and in law "bonds" as contemplated by Amended Section 6 of Article IX of the Constitution of Florida and that as such, they should not be issued, nor confirmed by decree of the Circuit Court, until after the same should be first submitted to, and approved by, a majority of the votes cast in an election in which a majority of the freeholders who were freeholders residing in Leon County, should participate. Accordingly said Judge denied the prayer of the petition for validation and entered his decree to that effect, from which this appeal has been taken on behalf of the authorities of Leon County, as petitioners in the Court below.

Any contractual device for the present funding of tax revenues contemplated to be raised or made available for reimbursement in future years, contrived to be issued as an enforceable legal security to the obligee, or his assignee, by means of which such obligee or his assignee will acquire a legal or equitable right to coerce by judicial processes the repayment of a sum of money advanced on the strength thereof, together with interest for the hire of the amount

advanced, however calculated or provided to be paid upon the sum so involved, is in contemplation of Amended Section 6 of Article IX of the Constitution of Florida a "bond" and within the purview of the specific provisions and limitations of that section as to issuance of "bonds." This is so, not only because any scheme of public financing, directly or indirectly, immediately or contingently calculated to obligate the future taxing power of the obligor, is within the scope of the Florida constitutional limitation on the issuance of "bonds," but because such contemplated obligation of the powers of future taxation can no more be afterwards repudiated as forming no part of the present transaction for a funding of the future public resources, than a mortgage executed as security for a note can be subsequently disregarded as forming no part of the contractual arrangement evidenced by the negotiation of the same. See: City of Clearwater v. State, *ex rel.* United Life Ins. Co., 108 Fla. 623, 147 Sou. Rep. 459, citing to this effect Godchaux v. Estopinal, 142 La. 812, 77 Sou. Rep. 640.

The petition for validation shows that on the 24th day of January, 1935, a resolution was duly adopted by the Board of County Commissioners of the County of Leon, in the State of Florida, wherein it was recited that it was deemed necessary to erect a new jail for Leon County, Florida, and which provided for giving notice that at the next regular meeting of the Board to be held on March 7, 1935, the question of whether or not a levy would be made for the purpose of constructing such jail to be acted upon by said Board.

Due notice of said meeting was given, and at such meeting a resolution was adopted by said Board wherein the necessity of the erection of such jail was determined and there was in and by said resolution levied a building tax of not

exceeding five (5) mills per annum for five (5) consecutive years beginning with the year 1935 in lieu of all other county building tax, the amount necessary to be collected each year in order to construct said jail building, with or without Federal funds, to be deetermined and included in the budget of said Board in each of the five (5) years aforesaid, the tax so levied to be assessed and collected at the same time and in the same manner as other State and county taxes are collected.

Thereafter, on September 2, 1935, the said Board adopted a resolution reciting the facts hereinabove set forth and further reciting that it then appeared that in order to construct the jail building provided for by the previous resolution, it was necessary to anticipate the collection of the taxes provided for in said resolution and to borrow the money contemplated to be realized from such levy; and further reciting that it appeared that said levy, based upon the then present taxable value, over the period of years for which such levy had been and lawfully might be made, would produce a sum of not less than $85,000.00. The said resolution then provided for the issuance of certain Tax Anticipation Certificates of Indebtedness describing the numbers, denominations and maturities thereof, place of payment and other form and details of said certificates and described the security to be given incident thereto as follows:

"Sec. 4. There is hereby pledged as security for said Tax Anticipation Certificates of Indebtedness and to provide a sinking fund for the payment and retirement of the said Tax Anticipation Certificates of Indebtedness as the same shall mature serially as hereinabove particularly set forth, only the proceeds of the tax levy heretofore made by the said Board by resolution adopted by the said Board

on the 7th day of March, A. D. 1935, and it is hereby made the duty of the said Board and its successors or any other body which may hereafter be vested by law with the power of levying and collecting taxes for and in behalf of the County of Leon, in the State of Florida, to levy and collect annually the taxes provided for in the said resolutions, not to exceed the limits prescribed by law and the terms of said resolutions, and no taxes collected under the authority of said resolution shall be appropriated for any other purpose than that for which the said tax is levied and collected and no other or further tax shall ever be levied, assessed, or collected for the payment of such Tax Anticipation Certificates of Indebtedness nor shall the same be construed as general obligations of said county, pledging the full faith and credit and taxing power thereof."

"Sec. 5. That the said Board of County Commissioners of Leon County, Florida, be and they are hereby authorized and empowered to dispose of said Tax Anticipation Certificates of Indebtedness, in whole or in part, by delivery thereof to the United States Government or any administrative branch thereof, for value, or to the contractor or contractors constructing such a jail or by public or private sale; provided, however, that such Tax Anticipation Certificates of Indebtedness should not be disposed of or sold for value, services or cash at less than the par value thereof, plus accrued interest."

The resolution further provided that the attorney for said Board should prepare the form of such Tax Anticipation Certificates of Indebtedness and should take the necessary proceedings for the validation of the same and this proceeding was brought in the Circuit Court of Leon County, Florida, in pursuance to such resolution.

No question is raised in this case as to the authority of

the Board of County Commissioners of Leon County to levy the tax hereinabove mentioned; as to the regularity of the proceedings leading up to the levying of such tax; but only as to the authority of said Board to presently fund the proceeds of such tax levy by means of the Tax Anticipation Certificates of Indebtedness hereinabove described without the same having been approved at an election as provided by Section 6, Article IX, of the Constitution of the State of Florida.

The argument advanced by appellant in the present case is that because the proposed Tax Anticipation Certificates of Indebtedness are not general obligations of Leon County, but are expressly made payable solely and only if, as and when the county collects the special five-mill tax that has been levied by the County Commissioners of Leon County pursuant to Section 2384 C. G. L., 1556 R. G. S., that this feature of the arrangements brings the present situation within the rule of State v. City of Miami, 113 Fla. 280, 152 Sou. Rep. 6; State v. City of Lake City, 116 Fla. 10, 156 Sou. Rep. 924; State v. City of Daytona Beach, 118 Fla. 29, 158 Sou. Rep. 300, wherein the present funding of corporate water revenue certificates without the necessity of a freeholders' election to approve same, was upheld as valid, notwithstanding Amended Section 6 of Article IX of the State Constitution.

Stated another way, the argument is that under the authorities (Borland v. Towles, 69 Fla. 125, 67 Sou. Rep. 640; Marshall v. State, 88 Fla. 329, 102 Sou. Rep. 650) existing prior to the adoption of Amended Section 6 of Article IX of the Constitution, the Board of County Commissioners of Leon County were lawfully empowered to determine the necessity for a jail, to have levied a building tax for the construction thereof, to have contracted for the

construction of such jail and to have issued for the cost of such construction, its certificates of indebtedness, or its warrants payable as and when funds' were realized and on hand in the treasury from the authorized five-mill building tax levied by the Board for such construction, and that therefore the present plan of issuing Tax Anticipation Certificates of Indebtedness leading to the same end, is no more contrary to Section 6 of Article IX than the award of a jail construction contract would be, if done on the strength of the five-mill tax levy, absent the issuance of any such Tax Anticipation Certificates of Indebtedness.

In justification of this contention it is pointed out that in the Borland case (69 Fla. 125), *supra,* this Court specifically has held that under Chapter 5698, Acts 1907, now Section 2384 C. G. L., 1556 R. G. S., it is not required that the authorized five-mill tax be accumulated into a fund consisting of the proceeds' of the said tax, before a contract can be lawfully entered into for the erection of a court house or jail to be ultimately paid for out of the proceeds of the tax levied, and that therefore, on principle, it should not be held that the present funding of the tax itself by means of the proposed Tax Anticipation Certificates of Indebtedness stands on any different footing as to legality than would a jail construction contract stand if the latter method of procedure were adopted to accomplish the object, instead of the present one. (Citing Hathaway v. Munroe, 97 Fla. 28, 119 Sou. Rep. 149.)

By Section 2384 C. G. L., 1556 R. G. S., it is recognized that the cost of erecting or repairing a court house or jail, or of erecting an addition or additions to any court house or jail, is a necessary county expense, and by that section it is contemplated that the cost of such court house or jail shall be ratably distributed in the ordinary county budget

and currently paid by means of a five-year annual tax in an amount not exceeding five mills per annum, whenever the County Commissioners shall determine that it is necessary that such expense be incurred on the county's part, for the procurement of the named county facilities under a present contract for their construction. That such a plan is not invalid, because it is merely the exercise of the ordinary power to contract for current county requirements in the manner prescribed by statute, is established by the principles laid down by this Court in the case of Hathaway v. Munroe, 97 Fla. 28, 119 Sou. Rep. 149. Such principles have in no respect been abrogated by the adoption of Amended Section 6 of Article IX of the Constitution governing the issuance of bonds, because the power to contract for current governmental needs against contemplated currently budgeted revenues available to be expended for same is not the creation of an unauthorized bond debt without the approval of the freeholder electors in violation of Amended Section 6 of Article IX of the State Constitution. State, *ex rel.* Kurz, v. Lee, 121 Fla. 360, 163 Sou. Rep. 859.

The purpose of Amended Section 6 of Article IX of the Constitution was to impose a constitutional limitation on county, district and municipal financial operations insofar as the same might involve any form of direct or indirect contractual obligation of anticipated future tax revenues to presently *raise funds* for county, municipal or district purposes, that would have to be repaid *in futuro,* with interest, to the parties advancing same in anticipation of a redemption of the contractual obligation so incurred. The limitation so imposed must be construed to mean that no financial obligation in the form of a present funding of future tax anticipations shall be made, whether general or limited, direct or contingent in form, unless the assumption of the

obligation of same be first approved by a favorable vote of a majority of the county, municipal or district freeholders as provided for in said constitutional section and article.

But the constitutional provision evidenced by Section 6 of Article IX was not to hamper the ordinary powers of public authorities to enter into binding service or construction *contracts* for current governmental needs and requirements, such as the erection or repair of essential public edifices and the like, when done in due course of their authorized budgetary administration of public affairs. Its outstanding purpose was to lay a restraint only on the spendthrift tendencies of political subdivisions to load the future with obligations to pay for things the present desires, but cannot justly pay for as they go, thereby necessitating the involvement of the public credit in some form of funding or borrowing operation *by which money can be realized on credit* beyond the present means of payment so as to become available for disbursement in paying for considerations received in the present to be discharged out of public revenues anticipated to be realized or raised in the future. See: Boykin v. Town of River Junction, 121 Fla. 902, 164 Sou. Rep. 558, opinion filed December 12, 1935.

We hold therefore that while under Section 2384 C. G. L., 1556 R. G. S., the County Commissioners of Leon County are authorized to lay a tax of not exceeding five mills per annum for five consecutive years in order to raise funds to pay for the erection of a new or enlarged county jail for the county as a current county budgeted expense for the five year period, and are by the same statute and the construction placed upon it by this Court in the Borland case, *supra,* duly authorized to enter into a contract for the erection of such needed public improvement to be paid for in installments running over a period not exceeding five

years out of the proceeds of said special tax when, and as, collected to apply on the contract so entered into, that nevertheless the funding operation contemplated to be carried out in the proposed issuance or Tax Anticipation Certificates of Indebtedness is nothing more than a proposal to issue on the county's credit a form of security that is in contemplation of law a limited revenue county "bond" not duly authorized according to the limitations of Amended Section 6 of Article IX of the Constitution, and that therefore the decree of the court below in refusing validation of the same is correct and should be affirmed.

In this connection, however, it is our conclusion that under Chapter 14715, Acts 1931, the proposed Tax Anticipation Certificates of Indebtedness may be submitted to a vote of the freeholders of Leon County for approval in the method prescribed by the Constitution and that the decree of denial of validation as entered in the Circuit Court should be modified so as to provide for a supplementary reconsideration of new validation proceedings in the event an approving election in accordance with Chapter 14715, Acts 1931, *supra*, shall be called and held and shall result in a favorable vote in favor of the issuance of such Tax Anticipation Certificates of Indebtedness.

Chapter 14715, Acts of 1931, is not limited in its application to county, district or municipal bond elections *eo nomine*. It is applicable to every form of contractual funding device that may require the consideration and approval of a majority of the freeholder electors of a county, district or municipality to be expressed in accordance with Amended Section 6 of Article IX of the Constitution in order to render valid the engagement represented by same.

Decree refusing validation affirmed without prejudice to

further and supplementary validation proceedings not in-consistent with this opinion.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BU-FORD, J. J., concur.